IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL S. PEKIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 3644 |
| ) | |
| THE PAUL REVERE LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Michael Pekin has sued The Paul Revere Life Insurance Company over its decision to stop paying him residual disability benefits under an insurance policy he had purchased. Pekin's eyes were badly damaged by LASIK surgery,[1] which caused him to leave his job as a trial lawyer. He seeks a declaratory judgment of insurance coverage and asserts claims for breach of contract and violation of Illinois insurance and consumer protection laws. Pekin has moved for summary judgment on the declaratory judgment and breach of contract claims. Paul Revere has cross-moved for summary judgment on all claims. For the reasons stated below, the Court denies both motions.

## Facts

Pekin worked as a trial attorney and was a partner in the law firm of Pekin, Levin & Associates. In 1993, he purchased a disability insurance policy from Paul Revere's

---

[1] LASIK stands for laser-assisted in situ keratomileusis.

predecessor. The policy included "residual disability" coverage, which entitled Pekin to monthly payments if he was unable to perform key functions of his occupation due to illness or injury but was not totally disabled. Under the residual disability provision, if an injury or sickness caused a loss of earnings of at least twenty percent of prior earnings, Pekin was entitled to monthly payments of residual disability benefits.

In 1999, Pekin had LASIK surgery to correct his vision. The surgery was not successful, and Pekin began suffering complications including severe eye dryness, constant eye pain, headaches, and occlusion of his tear duct drainage system. These problems made it difficult for Pekin to read and concentrate for prolonged periods of time and interfered with his ability to perform his duties as a trial attorney.

In December 2002, Pekin took a six month leave of absence from his law firm, during which he hoped his eyes would heal. In January 2003, he took a job with a start-up company, Oasis Legal Finance Group, LLC. His job at Oasis did not require the same prolonged periods of reading and concentration as his work as a trial lawyer, and he was able to perform his job duties at Oasis despite his eye problems. Pekin also accepted a minority ownership interest in Oasis. Some time before the six month leave was set to expire in June 2003, Pekin resigned from his law firm, which bought out his share of the partnership. He continued to work at Oasis.

Oasis, a start-up company, was not a financial success. In early 2004, Pekin began considering what he might do in the event Oasis went out of business. According to Pekin, he realized at that time that his eye condition was not improving despite what he had hoped based on his doctors' advice. He concluded that he would never be able to resume his occupation as a trial attorney. Based on this conclusion, in

March 2004, he applied to Paul Revere for residual disability insurance benefits under the policy, claiming that the complications from his LASIK surgery had left him unable to perform his work as a trial attorney.

Pekin's claim for benefits was assigned to Kimberly Boivin, a Paul Revere employee. From April to September 2004, Boivin investigated Pekin's claim. During this investigation, Boivin reviewed Pekin's medical records, interviewed Pekin, his doctor, and his former law partner, and required Pekin to submit to a medical examination by a physician chosen by Paul Revere. According to Boivin's notes and reports, Pekin claimed his eye problems prevented him from returning to work as a trial lawyer and as a result he had been forced to work at Oasis, where he earned substantially less money than he had when he was in law practice.

As part of the investigation, Pekin was asked why he filed his notice of disability with Paul Revere so long after his LASIK surgery. Boivin reported that over the phone, Pekin told her he had a hard time accepting his disability and it had taken him until January 2004 to come to the conclusion that it was a permanent condition. In July 2004, Boivin asked Pekin explain in writing the circumstances that led to his claim for benefits, including an explanation for the late filing of notice. In a letter dated July 28, 2004, Pekin again explained that he did not arrive at the conclusion that he would never be able to return to the practice of law until March 2004, which explained his late filing for residual disability benefits.

In November 2004, Paul Revere began paying Pekin residual disability benefits. Paul Revere identified Pekin's "date of disability" as March 10, 2004. Pekin's policy included a ninety-day waiting period, so the payments included back payment dating to

July 2004. The amount of the payments was calculated using a formula laid out in Pekin's policy. Under the policy, residual disability benefits are calculated based on "prior earnings," a term defined as "the greater of your average Monthly Earnings for the year just before your disability began; or your highest average Monthly Earnings for any 2 successive years during the 5 year period just before Your Disability began." Compl., Ex. A at 2.2. Pekin's benefit was calculated using the second method. His highest average monthly earning for a two-year period was during the time he was a practicing lawyer, so Paul Revere used his earnings from Pekin, Levin & Associates to calculate the amount of the benefit. Dep. of Marc Champoux, Pl.'s Mot. for Summ. J., Ex. 13 at 17.

Until January 2005, Paul Revere paid Pekin benefits under a reservation of rights, which stated that "the payment cannot be construed as an admission of past, present or future liability and we reserve our right to enforce any and all provisions of the policy." Pl.'s L.R. 56.1 Stat. ¶ 42. On January 27, 2005, however, Paul Revere informed Pekin in a letter that it "accepted liability" for Pekin's claim and "removed the Reservation of Rights that was applicable to prior payments." *Id*. ¶ 45.

To continue to receive residual disability benefits, Pekin was required to submit monthly earnings statements to Paul Revere to verify that he was still experiencing a loss of earnings of twenty percent or more. Because Pekin had a partial ownership in interest in Oasis, he was also required to submit profit and loss statements for the company to allow Paul Revere to determine whether he received any income from his ownership interest.

In 2006, a new claims adjuster, Scott Allen, was assigned to administer Pekin's

claims after an internal reorganization at Paul Revere. In early 2007, Oasis changed its accounting method from cash basis to accrual basis. Under the new accounting method, Oasis' monthly profit and loss statements began showing a positive net income for 2007, though apparently the financial health of the company had not changed substantially.

The change in accounting method for Oasis caused Paul Revere to reevaluate Pekin's claims for residual disability payments, because the profit and loss statements under the new method seemed to indicate that he was earning substantial money from his partial ownership of Oasis. According to Pekin, this was "ghost" income brought about by the change in accounting methods; he contends that he was not actually earning substantially more. In March 2007, however, Paul Revere stopped making payments to Pekin. In October 2007, it notified him that it was seeking repayment of the benefits paid to him from January 2007 to March 2007 on the ground that under the new method of accounting, he had not experienced a qualifying loss in earnings.

This was the beginning of problems between Pekin and Paul Revere. In the months following, Pekin retained counsel. Oasis returned to its old way of accounting and Pekin, through his counsel, submitted revised profit and loss statements to Paul Revere, which he felt demonstrated his continued eligibility for benefits. A financial analyst at Paul Revere reviewed the revised statements and concluded that Pekin appeared to have qualified for benefits for much of 2007.

In a letter dated January 31, 2008, however, Paul Revere notified Pekin that it had determined he was no longer eligible for residual disability benefits, regardless of the accounting method employed by Oasis. It cited two reasons for the determination.

5

First, as of Pekin's official "date of disability" (March 10, 2004), Pekin was working at Oasis, and Paul Revere had determined that Pekin's eye condition did not impact his ability to perform his duties at Oasis. Second, Paul Revere had concluded that any loss of earnings Pekin experienced at Oasis was the result of the company's general financial problems and was unrelated to his eye condition.

According to Pekin, the circumstances cited in the January 31, 2008 letter – his ability to perform his duties at Oasis and the fact that his eye condition did not cause Oasis' financial woes – are uncontested, but irrelevant. According to Pekin, Paul Revere knew both of these things at the time it made its original determination that he was eligible for benefits. Although Pekin did not make his claim until March 2004, he argues, his actual disability dates back to the date of his failed LASIK surgery, and his claim was for the loss of earnings he experienced because he was unable to return to his more lucrative occupation as a trial lawyer.

Pekin has sued Paul Revere over this dispute about his entitlement to residual disability benefits. In counts 1 and 2, he seeks a declaration of past and future coverage of his disability. In count 3, he raises and claim for breach of contract and seeks damages equal to the total amount of disability payments he would have received from March 2007 to the present if Paul Revere had not denied his claim. In count 4, he claims that Paul Revere's actions in denying his claim were vexatious and unreasonable, in violation of section 155 of the Illinois insurance code, 215 ILCS 4/155 (section 155). In count 5, he alleges that Paul Revere knowingly engaged in deceptive acts and practices when it claimed Pekin was not entitled to coverage, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1.

Pekin has moved for summary judgment on counts 1, 2, and 3, alleging that Paul Revere waived any defenses to coverage in January 2005 when it accepted liability and began paying him monthly residual disability payments without a reservation of rights. Paul Revere has cross-moved for summary judgment on all counts, arguing that the record clearly establishes that Pekin was employed as an executive vice president at Oasis at the time of the officially-designated date of disability and his condition does not interfere with his ability to pursue his occupation at Oasis and has no causal connection to Oasis' financial troubles. For the reasons stated below, the Court denies both motions.

## Discussion

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009).

**A.  Pekin's policy**

The portion of Pekin's plan addressing residual disability benefits reads as follows:

> "Residual Disability," prior to the Commencement Date, means that due to Injury or Sickness which begins prior to age 65:
>
> > a. (1) You are unable to perform one or more of the important duties of Your Occupation; or (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them;
> >
> > . . .

> As of the first Commencement Date to occur, Residual Disability means that due to the continuation of that Injury or Sickness:
>
>> a. You incur a Loss of Earnings while You are engaged in Your Occupation or another occupation;

Compl., Ex. A at 1.11. The policy defines "Your Occupation" as "the occupation or occupations in which you are regularly engaged at the time Disability begins." *Id*. at 1.10. To make a claim, the policy requires that "written notice of the claim . . . be given to [Paul Revere] within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible." *Id*. at 9.2.

**B.      Counts 1, 2, and 3**

In count 1, Pekin seeks a declaratory judgment establishing his entitlement to residual disability benefits. In count 2, he seeks an order instructing Paul Revere to pay benefits going forward. In count 3, he seeks to recover the benefit payments from 2007 to the present to which he claims he is entitled.

Counts 1, 2, and 3 all hinge on the parties' disagreement about Pekin's occupation and the date of onset of his disability. Pekin contends that his disability occurred immediately after his unsuccessful LASIK surgery and that it forced him to switch occupations from trial attorney to executive vice president at Oasis. He argues that the only reason he did not file for residual disability benefits sooner is that he hoped, based on the information he received from his doctors, that his condition might improve such that he could return to the practice of law. It was not until March 2004, he contends, that he finally realized that he would never be able to practice law again, prompting him to file a claim with Paul Revere. He has moved for summary judgment on counts 1, 2, and 3, arguing that Paul Revere waived any objection it had to the

proper determination of his occupation and date of disability when it began paying him benefits without reservation of rights in early 2005.

Paul Revere, on the other hand, argues that Pekin did not become disabled until March 10, 2004, when he filed his claim. At that time, he was employed at Oasis. Therefore, Paul Revere argues, his occupation for purposes of evaluating his claim is executive vice president of Oasis. Paul Revere has moved for summary judgment on counts 1, 2, and 3, arguing that Pekin is not entitled to any benefits resulting from his disability because he admits he is able to fully perform his duties at Oasis despite his eye problems, and any loss of earnings he suffered at Oasis were the result of the company's broader financial woes, not his injury.

*1.  Occupation*

The Court concludes that there is a genuine issue of fact about what Pekin's "occupation" was for purposes of evaluating his residual disability benefits claim. Pekin argues that his claim for residual disability benefits is and always has been based on his inability to continue in his occupation as a trial lawyer and that Paul Revere knew this was the basis of his claim. Paul Revere counters that from the outset of Pekin's claims, he has worked at Oasis, not as a trial lawyer, and therefore his occupation for purposes of his disability benefits claim is executive vice president of Oasis.

Both positions find support in the record. In a "claimant telephone interview" completed by Boivin at the outset of the investigation of Pekin's claim, she wrote that "[i]nsured is claiming Residual Disability in his [occupation] as a trial attorney." Pl.'s Mot for Summ. J., Ex. 17. In a "field and vendor services field report" Boivin stated that Pekin "believes that he is no longer capable of working as a trial attorney." *Id.*, Ex. 8 at

3. Boivin's report said that Pekin told her "that he [had] experienced some improvement in his condition but not enough to return to his former occupation," and that he had "suffered a significant financial loss since his career change." *Id.* at 4. In a "phone memo" from July 2004, Boivin also indicated that she understood Pekin's claim was for the earnings he lost when he left the practice of law to work at Oasis, stating that "[i]nsured did not understand why we would question his claim so much because it is quite apparent on his tax returns the loss of income that he has. He explained that he was making very good money working for Pekin and Levin much more than [he] is now and would not have left if he didn't have this condition." *Id.*, Ex. 14. From this, a reasonable jury could conclude that Pekin's disability claim was based on his occupation as a trial lawyer, and that Paul Revere knew as much.

On the other hand, Paul Revere correctly notes that at the time Pekin filed his notice of disability, he was working as an executive vice president at Oasis and had been doing so for over a year. In October 2003, five months before he filed his claim for residual disability benefits, Pekin applied for increased coverage under the policy, and in that application he identified his occupation as executive vice president of Oasis. Def.'s Mot. for Summ. J., Ex. 43.[2] From this, a reasonable jury could conclude that as of the date Pekin applied for his increased coverage, his occupation for Paul Revere's purposes was executive vice president at Oasis, not trial lawyer.

2. *Date of disability*

The record also indicates that there is a genuine issue of fact about the date of

---

[2] In the same application, Pekin indicated that he was not disabled.

Pekin's disability. The parties agree that Paul Revere identified March 10, 2004 as the "date of disability." What is not clear is why that date was selected or what its selection means for Pekin's claim of benefits.

Section 9.2 of the policy, which deals with notice, states that to make a claim, Pekin must provide "written notice of the claim . . . within 30 days after a covered loss starts. If this cannot be done, then notice must be given as soon as reasonably possible." *Id*. at 9.2. Pekin's argument is essentially that although his notice was after the thirty-day period had elapsed, it was "as soon as reasonably possible" because it took him so long to understand he was disabled. Paul Revere argues that Pekin's argument that his covered loss dates back to his departure from law practice in January 2003 cannot stand, because he did not submit a written notice of disability until March 15, 2004, and the policy requires written notice of disability within thirty days after a covered loss starts. *Id*. Paul Revere argues the "covered loss" did not begin until Pekin filed his notice of claim, and thus March 10, 2004 should be treated as the actual date of the start of the claimed disability.

Once again, the record provides evidence to support both arguments. In her original phone interview with Pekin, Boivin noted that "[i]nsured is claiming a disability date of 1/2003," and in response to the question "if late notice of claim, what is the reason," stated that "[i]nsured indicated that he just had a hard time accepting his disability." *Id*. Ex. 17.

Boivin's supervisor noted in a "management referral" dated July 2004 that Pekin's claim presented a "significant late notice issue." *Id.*, Ex. 18. Ultimately, however, Paul Revere decided to pay Pekin benefits without reservation of rights

11

starting in 2005. From these facts, a reasonable jury could conclude that Paul Revere considered Pekin's written notice to be late, but ultimately decided to excuse the lateness because it accepted his explanation that it took time for him to understand that his condition was permanent and he would never again be able to practice law. A reasonable jury likewise could conclude that given the circumstances, Pekin could not have provided notice within thirty days of his actual disability because he did not realize it existed but that he had given notice "as soon as reasonably possible" once he understood he no longer could work as a trial attorney.

Other portions of the record, however, suggest that Paul Revere selected March 10, 2004 as the appropriate date because that is when the company legitimately determined Pekin's disability began. A letter from Paul Revere to Pekin's counsel states that "given Mr. Pekin's statement of July 28, 2004 in which he indicates that he did not feel as if he was disabled when he left Pekin, Levin & Associates nor unable to practice law as an attorney, we established March 10, 2004 as the date of loss for our evaluation of this claim." *Id.*, Ex. 21. In a memo describing a phone call during the investigation of Pekin's claim, Boivin indicated that she had discussed the question of the date of disability with Pekin. She "[a]dvised the Insured that we also needed to discuss the date of disability he was claiming and advised him that we would only be able to consider the claim back to the date written proof of loss was given per provision 9.4 of his policy. Which we received [with] the letter dated from him on March 15, 2004 therefore we would consider back to [that date] and not January of 2003." *Id.*, Ex. 14. Boivin "advised the Insured because of his unique situation [she] would have to discuss this further with [her supervisor] to determine a date of disability, as [she had] not run

12

into this type of situation before." *Id*.

From this evidence, a reasonable jury could conclude that Paul Revere had determined based on Pekin's notice that his qualifying disability did not begin until March 2004. At the time he filed his claim, Pekin worked at Oasis, a job he concedes he is able to perform despite his eye problems. Thus, if March 10, 2004 was selected because Paul Revere believed it to be the actual onset of the disability, Pekin may not be entitled to benefits.[3]

### 3. Conclusion

Based on the materials in the record, the Court concludes that there is a genuine issue of fact about the date of Pekin's disability and about what his occupation was for purposes of evaluating his claim. Because counts 1, 2, and 3 all depend on the determination of these points, the Court denies both sides' motions for summary judgment as to these claims.[4]

**C. Counts 4 and 5**

Pekin's complaint also includes two claims based on what he characterizes as Paul Revere's bad faith conduct in denying his claim. In count 4, Pekin alleges that Paul Revere has violated section 155 of the Illinois insurance code, which allows insured parties to recover against insurance companies that engage in "vexatious and

---

[3] If this is the case, it is not entirely clear why Paul Revere ever paid any residual disability benefits to Pekin. As indicated above, however, the Court is not persuaded that the fact that Pekin did receive some payments definitively resolves the question of date of disability in his favor, as he contends.

[4] Because the Court concludes that there is a genuine issue of fact as to these issues, it need not reach the question of what effect, if any, Oasis' change in accounting methods had on Pekin's earnings.

unreasonable" behavior in an effort to deny claims. 215 ILCS 4/155. In count 5, he alleges that Paul Revere claimed his disability did not start until March 10, 2004, a statement it knew to be false, in an effort to dissuade him from challenging its basis for denying his coverage and ending his benefits. This, Pekin contends, constitutes consumer fraud in violation of ICFA, 815 ILCS 505/1.

Paul Revere has moved for summary judgment on both claims. It argues the Court should grant summary judgment on count 4 because there was a genuine dispute over whether Pekin is entitled to coverage, which it argues precludes a section 155 action. Paul Revere is correct in noting that a party may not recover under the section 155 if a genuine issue exists regarding coverage. The fact that the Court has concluded that there are genuine issues of fact about the proper date of disability and occupation does not, however, compel the conclusion that a genuine issue exists as to insurance coverage. A reasonable jury could credit Pekin's version of events and conclude that Paul Revere's cited reasons for denying coverage were pretextual, and thus no genuine dispute over insurance coverage existed. Count 4 therefore presents the kind of factual questions and credibility determinations best left to a jury. The Court accordingly declines to enter summary judgment on count 4.

In its motion for summary judgment on count 5, Paul Revere argues that section 155 provides the exclusive remedy for insurance allegations of this type, and therefore Pekin cannot seek recovery under ICFA. Under Illinois law, however, "a defendant may engage in conduct that both breaches a contract and constitutes a separate and independent tort." *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 523, 675 N.E.2d 897, 902 (1997). "Well-established tort actions, such as common law fraud, require proof of

14

different elements and remedy a different sort of harm than the statute does. These torts address insurer misconduct that is not merely vexatious and unreasonable. The statute was not intended to insulate an insurer from such tort actions." *Id.* If, however, a count alleges "nothing more than the conduct proscribed by section 155 [it] is preempted by the statute." *Leona's Pizzeria, Inc. v. Northwestern Nat'l Cas. Co.*, 203 F. Supp. 2d 930, 934 (N.D. Ill. 2002).

Pekin alleges that Paul Revere engaged in fraud when it discontinued his benefits. He alleges Paul Revere knowingly claimed the wrong date of his disability when it in fact knew he was disabled beginning with his botched surgery. He further alleges that Paul Revere knew that his occupation was as a trial lawyer and acted on that knowledge when it first awarded him benefits but that it fraudulently claimed that it had never done so and that the correct occupation was executive vice president of Oasis. Paul Revere engaged in these frauds, Pekin alleges, to try to persuade him not to challenge the adverse benefits determination. These allegations arguably go beyond the mere "vexatious and unreasonable" behavior that is punishable under section 155 and state a separate claim of fraud under ICFA. Though the claims are based on the same underlying facts, the Court is persuaded that Pekin may be able to establish separate causes of action. Therefore, the Court denies the motion for summary judgment on count 5. This determination may, of course, be revisited at or after trial.

## Conclusion

For the reasons stated above, the Court denies all motions for summary judgment by all parties (docket nos. 76, 87). The case is set for a status hearing on

July 20, 2010 at 9:30 a.m. for the purpose of setting a trial date.

                                                                      MATTHEW F. KENNELLY
                                                                     United States District Judge

Date: July 8, 2010